# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THOMAS MANUEL,<br><br>                Plaintiff,<br><br>vs.<br><br>AVENTINE RENEWABLE ENERGY HOLDINGS, INC., AND PACIFIC ETHANOL, INC.,<br><br>                Defendants. | 8:15CV188<br><br>AMENDED MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss and Transfer Venue (Filing No. 8) submitted by Defendants Aventine Renewable Energy Holdings, Inc. ("Aventine") and Pacific Ethanol, Inc. ("Pacific") (collectively "Defendants"). For the reasons discussed below, the motion will be granted in part and denied in part.

## BACKGROUND

On or about March 15, 2010, Plaintiff Thomas Manuel ("Manuel") entered into an employment agreement with Aventine to serve as Aventine's Chief Executive Officer ("CEO"). (Filing No. 3 ¶ 8.) As part of his employment, and pursuant to Aventine's 2010 Equity Incentive Plan ("Equity Plan"), Manuel received awards of deferred equity compensation for a term lasting through December 21, 2012. (*Id.* ¶ 9.) This compensation included (i) stock options to purchase 128,250 shares of Aventine Common Stock ("Common Stock"); (ii) 42,750 restricted shares of Common Stock ("Restricted Stock"); and (iii) 128,250 Restricted Stock Units ("RSUs"). (*Id.*) Manuel and Aventine also entered into a Restricted Stock Unit Agreement ("RSU Agreement"). Per this agreement, the 128,250 RSUs of the Equity Plan were to be credited "from time

to time" to a separate account maintained for Manuel "on the books of Aventine." (*Id.* ¶ 10.)

Aventine terminated Manuel's employment on or about August 19, 2011. That same month, Aventine and Manuel entered into a Mutual Release ("Release") by which they agreed that, as of August 19, 2011, all outstanding equity awards granted to Manuel were fully vested and exercisable. (*Id.* ¶ 13.) This included (i) options to acquire 128,250 shares of Common Stock with an exercise price of $45.60; (ii) 42,750 shares of Restricted Stock; (iii) 42,750 RSUs; (iv) 79,184 Hybrid Equity Units ("HEUs"); and (v) an additional 85,500 RSUs that were vested on August 19, 2011, "to be 'settled' on October 18, 2011, and entered into the books of Aventine as belonging to Manuel" (collectively, "Equity Awards"). (*Id.* ¶¶ 13–14.)

Manuel alleges that Aventine failed to comply with the terms of the Equity Plan, the RSU Agreement, and the Release. Namely, Aventine was required to convert all equity based compensation into immediately salable stock, which Manuel was to receive by October 18, 2011. On that date, Aventine Common Stock was trading for $10.50 per share. (*Id.* ¶¶ 15–18.)

Manuel filed his complaint with this Court in May of 2015. (Filing No. 1.) On August 25, 2015, Manuel filed an amended complaint (Filing No. 3) ("Amended Complaint") alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461; the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2010); and a breach of contract. Aventine then filed this motion seeking dismissal of Manuel's ERISA and NWPCA claims and a transfer of venue.

## STANDARD

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id*. at 630 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)). When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a

savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

## DISCUSSION

**I. Manuel's ERISA Claims**

Defendants urge this Court to dismiss Manuel's ERISA claims because, they argue, the pre-Release portions of the Equity Awards as administered pursuant to the Equity Plan and the RSU Agreement did not create an employee benefit plan subject to ERISA. Defendants also argue that even if the Equity Plan and the RSU Agreement created an ERISA plan, Manuel's signing of the Release waived such claims and limited his remedies to those for breach of contract. "Whether an ERISA plan exists, or whether benefits are premised on an ERISA plan, may be determined by whether the employer requires 'an ongoing administrative program to meet [its] obligation.'" *Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600, 605 (8th Cir. 2003) (quoting *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987)).

This Court need not consider whether, prior to the Release, portions of the Equity Awards constituted, or were distributed pursuant to, an ERISA-governed benefits plan because Manuel waived all ERISA claims by agreeing to the Release, and he cannot accrue new claims subsequent to its signing. "[R]eleases of legal claims in exchange for severance benefits are enforceable under ERISA." *Mead v. Intermec Techs. Corp.*, 271 F.3d 715, 717 (8th Cir. 2001) (citing *Mange v. Petrolite Corp.*, 135 F.3d 570, 571

4

(8th Cir. 1998); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162–63 (8th Cir. 1990) (articulating a nine-factor test for determining if an ERISA waiver is knowing and voluntary)[1]).

Manuel agreed through the Release to "waive all claims and rights [Manuel] may have under certain applicable federal . . . laws . . . including . . . [ERISA]." (Filing No. 10-3 § 4.)[2] In consideration for this release, Manuel and Aventine agreed that the Equity Awards were fully vested and would become exercisable by Manuel. (*Id.* § 2.) Per these terms, Manuel agreed to forgo his rights under ERISA, reserving only his right to bring a claim for a violation of the Release itself.[3] (*Id.* § 7.)

Manuel argues that his release of his ERISA claims only applied to claims that had accrued up to or before the signing the Release, and that any claims that arose

---

[1] Under *Leavitt*, the Court considers (1) the beneficiary's education and business experience; (2) the beneficiary's input in negotiating the release's terms; (3) the clarity of the release language; (4) the amount of time the beneficiary had for deliberation before signing the release; (5) whether the beneficiary read the release and considered its terms before signing it; (6) whether the beneficiary knew of his rights under the plan and the relevant facts at the release's signing; (7) whether the beneficiary was given an opportunity to consult with an attorney before signing the release; (8) whether the beneficiary received adequate consideration for the release; and (9) whether the beneficiary's release was induced by improper conduct on the part of the fiduciary. *Leavitt*, 921 F.2d at 162. In this case, no party has alleged that Aventine acted improperly in negotiating the Release or that Manuel had anything less than a full opportunity to negotiate and consider the terms and consult legal counsel if he so desired. Because of this, and because the record indicates that Manuel is an experienced business executive, the Court finds his waiver was knowing and voluntary.

[2] Because the Release is necessarily embraced by Manuel's Complaint, the Court may properly consider its contents in deciding Aventine's 12(b)(6) motion without running afoul of Federal Rule of Civil Procedure 12(d)'s command to convert such motions to motions for summary judgment if examining documents outside the pleadings. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." (internal quotation marks omitted)); *see also id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'"). Here, Manuel alleged the contents of the Release in the Complaint (Filing No. 3 ¶¶ 13–14), and though the parties dispute the effect of the Release's terms, they do not dispute the terms themselves.

[3] Manuel's reservation in the Release of his right to challenge the validity of his waiver of claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, (*see* Filing No. 10-3 § 7), is not at issue in this action.

subsequent to the signing could not have been knowingly and voluntarily released. Manuel is half-correct. Indeed, the Release only applies to those claims Manuel possessed "from the beginning of time through the date [of Manuel's signing the Release]." (Filing No. 10-3 § 3(a).) However, after Manuel released his rights, he could no longer accrue claims under ERISA. Rather, he had promised to limit his claims to breaches of the Release.

The Eighth Circuit's holding in *Seman v. FMC Corp. Ret. Plan for Hourly Employees*, 334 F.3d 728 (8th Cir. 2003), confirms this conclusion. In *Seman*, the Court of Appeals found that a plaintiff's waiver of claims against his employer in exchange for a negotiated set of benefits did *not* waive the plaintiff's claims for denial of disability retirement benefits under ERISA. However, in that case, the language of waiver as to such claims was ambiguous, and the release agreement stated that the plaintiff's "[t]hrift and [p]ension accounts will be handled in accordance with plan provisions and normal distribution schedules . . . ." *Id.* at 731–32. Because of the ambiguity of the breadth of the waiver, and the fact that the release stated the plaintiff would be treated like other former employees with respect to pension benefits, the plaintiff had not waived such claims. *Id.* at 732.

Here, no such considerations are present. Rather, Manuel explicitly waived all claims pursuant to ERISA. Rather than retaining the pre-Release structure of the Equity Awards, Manuel and Aventine agreed that the Equity Awards would become fully vested and exercisable on a date certain. Unlike the facts in *Seman*, where the plaintiff's "pension accounts" continued to be distributed post-release in accordance with an ERISA plan, the post-Release structure of the Equity Awards did not require any

6

administration or discretion on the part of Aventine[4] and could not, in and of itself, be considered an ERISA plan. *See Fort Halifax*, 482 U.S. at 12 ("To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility."). An alternate conclusion would render Manuel's promise to bring all subsequent claims as a breach of the Release devoid of meaning.[5] For these reasons, Manuel's claims under ERISA will be dismissed.

**II. Manuel's NWPCA Claim**

Manuel also pleads a claim under the NWPCA.[6] As with his ERISA claims, Manuel released his claims under the laws of Nebraska up to the date of signing the

---

[4] Manuel argues that Aventine continued to have discretion to determine whether Manuel's termination was with or without cause and to accord its distribution of the Equity Awards to applicable law, namely 26 U.S.C. § 409A. (Filing No. 17 at 10–11.) Neither argument is persuasive. As to Manuel's termination being with or without cause, the Release set forth all the relevant terms of the distribution of the Equity Awards. Manuel does not identify how a post-Release determination of the character of Manuel's termination by Aventine could affect Aventine's obligation to distribute the Equity Awards. As for Aventine's observance of § 409A, this Court cannot find any support for the proposition that distributing the Equity Awards in accordance with applicable laws constituted an administrative scheme under *Fort Halifax*. Absent such, this Court is unwilling to label legal compliance a type of "discretion."

[5] The court in *Seman* reached a similar conclusion while interpreting the settlement of ERISA claims under Minnesota law. *See* 334 F.3d at 732 ("Minnesota law requires courts to give meaning to all of the contract provisions . . . ."); *see also Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F. 2d 1114, 1115 (7th Cir. 1990) (applying the relevant state law to interpret a release of ERISA claims). Here, the Release is to be interpreted under the law of New York, (Filing No. 10-3 § 12.a), which adheres to a similar canon of contract interpretation. *See TBA Glob., LLC v. Fidus Partners, LLC*, 132 A.D.3d 195 (N.Y. App. Div. 2015) (citing *Two Guys from Harrison–N.Y. v. S.F.R. Realty Assoc.*, 472 N.E.2d 315, 318 (N.Y. 1984)) (recognizing that New York courts interpreting contracts should "avoid an interpretation that would leave contractual clauses meaningless").

[6] Because the Court will dismiss Manuel's ERISA claims, it must consider whether to exercise supplemental jurisdiction over Manuel's state law claims. A district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, a court should consider judicial economy, convenience, fairness, comity, and whether the plaintiff has attempted to manipulate the forum. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Here, no factors counsel strongly

Release. (Filing No. 10-3 § 4 ("[Manuel] waive[s] all claims and rights [Manuel] may have under . . . all . . . statutes . . . and other laws in any and all jurisdictions.").) Allowing Manuel to proceed with his NWPCA claim for Aventine's alleged subsequent noncompliance with the Release would read out of the agreement Manuel's promise only to enforce the Release itself. (*See id.* § 7 ("Except for an action to enforce this Mutual Release . . . the parties agree to refrain from filing or otherwise initiating any action . . . against the other party . . . over matters released or waived herein . . . .").) For this reason, Manuel's NWPCA claim will be dismissed.

## III. Dismissal of Pacific

Defendants move this Court to dismiss Pacific as a party from this action because Pacific has neither signed any of the relevant agreements nor assumed any of Aventine's obligations with respect to Manuel. (Filing No. 8 at 2.) In his Amended Complaint, Manuel pled that "[u]pon information and belief, [Pacific] is the surviving constituent company after the merger with [Aventine] and is now liable for the obligations and violations of [Aventine]." (Filing No. 3 ¶ 4.) Defendants urge dismissal because, they claim, Pacific is the parent corporation of Aventine and Manuel has not pled sufficient facts to overcome the general rule that a parent is not liable for the obligations of the subsidiary.[7] However, Manuel does not necessarily allege a parent-

---

against maintaining jurisdiction. Because Manuel's NWPCA claim turns on the same issue as his ERISA claims, i.e., the effect of his waiver of legal claims, judicial economy and comity favor the exercise of jurisdiction. Even though "in the usual case in which all federal-law claims are eliminated . . . the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims," *id.* at 350 n.7, here there appear to be no novel or complex issues of state law. Consequently, the Court will exercise its supplemental jurisdiction.

[7] Defendants claim the fact that Pacific is Aventine's parent corporation is "undisputed." (Filing No. 21 at 9.) In fact, the Amended Complaint alleges an alternate business relationship between the entities, which distinguishes this case from the facts in an earlier case cited by Defendants (*id.* at 10), in which the parent-subsidiary relationship was explicitly alleged in the pleadings. *See Kawa v. U.S.*

subsidiary relationship, but generally a merger of Aventine and Pacific and a resulting assumption of legal obligations by Pacific. Although the Amended Complaint is conclusory on this point, it is sufficient to meet Manuel's burden under *Iqbal* and *Twombly*. Consequently, Manuel's breach of contract claim against Pacific will be allowed to proceed at this time.[8]

## IV. Motion to Transfer

Finally, Defendants move this Court to transfer the case to the United States District Court for the Central District of Illinois. (Filing No. 8 at 2). Where jurisdiction and venue are proper, transfer of venue is governed by 28 U.S.C. § 1404, which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court is not limited to these factors, but must consider all relevant factors and examine the particular circumstances in the case at hand. *Terra Int'l., Inc. v. Miss. Chem. Corp.* (*Terra II*), 119 F.3d 688, 691 (8th Cir. 1997). The moving party typically bears the burden of showing why a change of forum is warranted. *Id.* at 695; *Stinnett v. Third Nat'l Bank of Hampden Cnty.*, 443 F. Supp. 1014, 1017 (D. Minn. 1978).[9] In this case,

---

*Bancorp, Inc.*, No. 8:08CV91, 2008 WL 4585432, at *2 (D. Neb. Oct. 14, 2008). With their motion for dismissal, Defendants submit evidence of their alleged parent-subsidiary relationship, however, the Court may not consider it without converting Defendant's motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Such an action by the Court is unwarranted at this early stage in the litigation.

[8] Defendants assert, in a single footnote in their brief in support of their motion, that service was defective because Manuel failed to serve them with his original complaint, and that the Court may dismiss this case because of it, pursuant to Rule 12(b)(5). (Filing No. 9 at 14 n.7.) Nowhere in their motion do Defendants move this Court to dismiss under Rule 12(b)(5). (*See* Filing No. 8.) The Court is unwilling to dismiss the case on the basis of the three-sentence footnote.

[9] Defendants argue that "when no relevant connection exists between a particular forum and the parties, potential witnesses, or the general dispute, a plaintiff's choice of forum is entitled to minimal weight in the § 1404(a) determination." (Filing No. 9 at 17 (citing *In re Apple, Inc.*, 602 F.3d 909, 913 (8th

although Manuel pleads only a loose connection to the state of Nebraska, Defendants have not met their burden to overcome it.

Courts consider several factors when balancing the convenience of the parties and witnesses, such as:

> (1) the convenience of the parties, (2) the convenience of the witnesses– including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra II*, 119 F.3d at 696.

Considering the factors as a whole, effecting a transfer would merely shift convenience from one party to another. The parties and their employees are likely to be the only witnesses and the primary witness is likely to be Manuel himself. Nebraska is the more convenient forum for Manuel[10] while Illinois is more so for Defendants.[11] While any relevant documents in Aventine's possession would be stored in Illinois, most of the documents likely to be needed for Manuel's remaining breach of contract claim are already before the Court. While virtually none of the underlying conduct occurred in Nebraska, nowhere do Defendants argue that a substantial portion occurred in Illinois. Neither Illinois's nor Nebraska's substantive law would apply to the breach of contract claim, which is governed by New York law. Though taken together, these factors do not strongly favor Nebraska, neither do they counsel in favor of transfer to Illinois.

---

Cir. 2010).). Because the record indicates that Manuel currently spends significant time in Nebraska, and Aventine operated two ethanol plants in the state, which Manuel had to oversee as part of his employment, there is a sufficient connection to Nebraska that Manuel's choice of forum should be afforded deference. *See In re Apple, Inc.*, 602 F.3d at 913 (noting that deference is afforded plaintiff's choice of forum on the assumption that such a forum will generally be "a convenient one").

[10] Although Manuel is a resident of Texas, he argues that Nebraska is a convenient forum for him because he spends substantial time in the state.

[11] Defendants note that any remaining employees of Aventine with knowledge of Manuel's case would be located in Illinois.

The factors relevant to the interests of justice[12] point to a similar conclusion. Here, the only pertinent factors—plaintiff's choice of forum and the comparative costs of litigating—merely reinforce the subjective reasons each party prefers its proffered forum. Such considerations are insufficient to warrant a transfer of venue. *See Terra II*, 119 F.3d at 696–97 (8th Cir. 1997) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)) ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." (internal quotation marks omitted)). For these reasons, the Court will deny Defendants' motion to transfer.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss and Transfer Venue will be granted in part and denied in part. Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss and Transfer Venue (Filing No. 8) submitted by Defendants Aventine Renewable Energy Holdings, Inc., and Pacific Ethanol, Inc., is granted in part as follows: Plaintiff Thomas Manuel's First, Second, Third, Fourth, and Sixth Claims for Relief in the Amended Complaint (Filing No. 3) are dismissed with prejudice;

2. Defendants' Motion to Dismiss and Transfer Venue (Filing No. 8) is otherwise denied.

---

[12] The factors courts consider when determining whether the interests of justice support transfer of venue include "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra II*, 119 F.3d at 696.

Dated this 4th day of January, 2016

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge